LEETONIA FURNACE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32272.   Promulgated June 30, 1931.

*James Milholland, Esq.*, for the petitioner.
*J. R. Johnston, Esq.*, for the respondent.

984

OPINION.

TRAMMELL: The respondent proposes to assess against the petitioner, Leetonia Furnace Company, as a transferee, deficiencies in income and profits taxes determined by him to be due from the McKeefrey Iron Company for the years 1917 and 1918. The sole issue for decision here is whether or not the petitioner is liable at law or in equity as a transferee of property of the taxpayer corporation within the meaning of section 280 (a) of the Revenue Act of 1926. The burden of proof is upon the respondent to show that the petitioner is liable as such transferee, but not to show that the taxpayer was liable for the tax. Section 602, Revenue Act of 1928. The facts were stipulated by the parties substantially as set out in our findings of fact above.

A transferee is one who takes the property of another without full, fair and adequate consideration therefor, to the prejudice of the rights of creditors. Do the stipulated facts show the petitioner to be a transferee of the property of the taxpayer?

The record discloses that the taxpayer corporation, McKeefrey Iron Company, operated its business at a profit during the years 1917 and 1918, but sustained losses in the subsequent years, so that it became largely indebted for money borrowed from banks and for amounts due trade and other creditors. In 1922, the iron company placed a mortgage on its property in the amount of $700,000 to secure the payment of its bonds in said amount, which bonds were hypothecated as collateral security on loans. In 1923 the Iron Company executed two chattel mortgages to cover certain property excepted from the bond mortgage. At the beginning of 1924, a petition in bankruptcy was filed against the iron company. By this time it had become reasonably apparent that the business, under conditions then existing, could not be operated profitably, and it appeared with certainty that the assets of the iron company in a bankruptcy proceeding would not be sufficient to pay the secured creditors. Accordingly, a plan of reorganization was adopted through cooperation of the stockholders and principal creditors. The Government was not a party thereto.

The primary, if not in fact the only, purpose of the reorganization plan was to conserve the assets with a view to realizing the maximum amount therefrom for the benefit of the creditors. It was not hoped that anything would remain for distribution to the stockholders, nor that the business could be operated at a profit.

Pursuant to such plan, the petitioner corporation was organized, and in exchange for its stock acquired all secured and unsecured claims held by creditors against the iron company, except that of the Government for taxes. The Government's claim was not known at that time; it had not been asserted, nor the amount determined. The petitioner also acquired, in exchange for shares of its stock, all outstanding stock of the debtor corporation. Being then the sole stockholder and sole creditor of the iron company, the bankruptcy proceeding was dismissed. Thereafter, by appropriate court action, the petitioner foreclosed its mortgage on the assets of the iron company and purchased same at sheriff's sale for the bid price of $185,000. Prior to sale, an appraisal was filed showing the appraised value of the property as $275,000.

To sustain his contention that these facts establish the liability of the petitioner as a transferee, respondent relies upon the decision of the Supreme Court of the United States in *Northern Pacific Ry. Co.* v. *Boyd*, 228 U. S. 482, and the court's later approving opinion in

*Kansas City Terminal Ry. Co.* v. *Central Union Trust Co.*, 271 U. S. 445. These decisions, in our opinion, do not support the respondent's position, but impel us to a contrary conclusion.

In the *Northern Pacific* case, the court approved in principle reorganizations such as that involved here, provided the reorganization is so effected as not to deprive creditors of their preferential rights over stockholders. Capital contributed to a corporation and represented by its shares of stock constitutes a fund subject to the payment of the corporate debts, and the rights of creditors therein are superior to the rights of the stockholders. Hence, no part of such fund may be distributed to the stockholders until the claims of all creditors, both secured and unsecured, are satisfied. In this respect, there is no distinction between creditors, except that the secured creditor is entitled to have his debt paid first and the unsecured creditor is entitled to what remains to the extent of his debt. On this point, the court in its opinion, said:

> Corporations, insolvent or financially embarrassed, often find it necessary to scale their debts and readjust the stock issues with an agreement to conduct the same business with the same property under a reorganization. This may be done in pursuance of a private contract between bondholders and stockholders. And though the corporate property is thereby transferred to a new company, having the same shareholders, the transaction would be binding between the parties. But, of course, such a transfer by stockholders from themselves to themselves cannot defeat the claim of a non-assenting creditor.
>
> \*      \*      \*      \*      \*      \*      \*
>
> That was done in the present case. \* \* \* if purposely or unintentionally a single creditor was not paid, or provided for in the reorganization, he could assert his superior rights against the subordinate interests of the old stockholders in the property transferred to the new company. They were in the position of insolvent debtors who could not reserve an interest as against creditors. Their original contribution to the capital stock was subject to the payment of debts. The property was a trust fund charged primarily with the payment of corporate liabilities. Any device, whether by private contract or judicial sale under consent decree, whereby stockholders were preferred before the creditor was invalid. Being bound for the debts, the purchase of their property, by their new company, for their benefit, put the stockholders in the position of a mortgagor buying at his own sale.

The court further quoted with approval from its prior opinion in *Louisville Trust Co.* v. *Louisville Ry.*, 174 U. S. 683, as follows:

> Assuming that foreclosure proceedings may be carried on to some extent at least in the interests and for the benefit of both mortgagee and mortgagor (that is, bondholder and stockholder) no such proceedings can be rightfully carried to consummation which recognize and preserve any interest in the stockholders without also recognizing and preserving the interests, not merely of the mortgagee, but of every creditor of the corporation. \* \* \* Any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation.

In the *Northern Pacific* case, as the court pointed out, the property of the old company was purchased by the new or reorganized company, under the foreclosure sale held pursuant to the consent decree, *for the benefit of the stockholders*, and the interests of those stockholders were preferred over the rights of the creditor, Boyd, for the payment of whose claim no arrangement had been made. The railroad cost $241,000,000. The reorganization contract contained the recital that the property at that time was of the full value of $345,000,000. There were lien debts against it in the amount of $157,000,000. It was bid in for $61,000,000 and the new company immediately issued bonds in the amount of $190,000,000 and stock in the amount of $155,000,000, or an aggregate of bonds and stock in the amount of $345,000,000, the agreed value, against property which it had bought a month before for $61,000,000. Thus, by means of the reorganization sale, the new company acquired property worth approximately $127,000,000 for which it paid nothing. To that extent the interests of the stockholders were preferred over the rights of the nonassenting creditor, and the court held that he was entitled to have his claim satisfied out of such property.

In the instant case, a wholly different situation is presented. The reorganization plan and the foreclosure suit under the consent decree pursuant thereto were primarily for the benefit of the creditors. It was a plan designed to reduce to the minimum a loss which it was apparent must fall upon the secured creditors. The assets were not sufficient to pay the lien debts and nothing would be left for the unsecured creditors or for the stockholders. At the time of the foreclosure sale, the mortgaged property was appraised at $275,000, the unpaid mortgage was then $584,853.09. The property was bid in by the petitioner for $185,000, and both the bid price and the appraisal appear from subsequent events to have been in excess of the fair market value of the property. The business could not be operated profitably, nor could the plant be sold as a unit. The property was sold piecemeal, as purchasers could be found, and the total amount of the proceeds was less than the price at which the petitioner purchased at the foreclosure sale.

In *Kansas City Ry.* v. *Central Union Trust Co., supra*, approving and applying the *Northern Pacific* decision, the court said:

Unsecured creditors of insolvent corporations are entitled to the benefit of the values which remain after lien holders are satisfied, whether this is present or prospective, for dividends or only for purposes of control. But reasonable adjustments should be encouraged. Practically, it is impossible to sell the property of a great railroad for cash; and, generally, the interests of all parties, including the public, are best served by cooperation between bondholders and stockholders. If creditors decline a fair offer based upon the principles above stated, they are left to protect themselves. After such refusal, they cannot attack the reorganization in a court of equity.

The respondent does not contend here that the Government ever at any time had a lien on the assets of the taxpayer corporation for the claimed taxes, or that it is entitled to be preferred before the lien holders. The Revenue Act of 1928, in section 613, provides that the amount of any tax, if not paid upon demand, shall be a lien in favor of the United States upon all property of the taxpayer *from the time the assessment list was received by the Collector*, but further provides that such lien shall not be valid as against any mortgagee, purchaser or judgment creditor until notice thereof has been filed as therein provided. The tax involved in this proceeding has never been assessed, nor notice thereof recorded. Hence, in respect of the lien holders the Government is in the position of an unsecured creditor, who is entitled to the benefit of the values which remain after the lien holders are satisfied, but in this case no value remained after satisfaction of the lien holders' claims. In fact, the assets were sufficient to pay only a portion of the claims of the lien holders.

The respondent lays stress upon the fact that the stockholders of the iron company exchanged their shares for stock in the furnace company, but this fact is unimportant, unless thereby the stockholders were to some extent at least preferred over the creditors, as occurred in the *Northern Pacific* case, *supra*. In that case, the court pointed out that the creditor was entitled to subject to the payment of his debt any interest sought to be retained by the stockholders, whether present or prospective, and whether for purposes of dividends or control. But in the instant case, the stockholders did not retain control of the corporate assets by obtaining control of the new corporation. In the process of reorganization they became minority stockholders. Nor was the stock issued to them for dividend purposes; no dividends were anticipated and none was ever derived. The old stockholders were given stock in the new corporation to enable them to participate in the liquidation of the assets *for the benefit of the creditors*, and the creditors themselves, upon exchange of their claims for preferred stock having voting rights, were in control.

The assets of the taxpayer corporation were entirely consumed in paying the mortgage debts. No portion remained to apply against the debts owing to the unsecured creditors or for distribution to the stockholders. As the result of the reorganization, the stockholders of the old corporation were in no sense preferred over the creditors. They got nothing, neither assets, dividends nor control. The petitioner corporation, as the sole stockholder of the taxpayer after reorganization, acquired nothing which it did not apply in payment of the secured debts.

If the respondent had sought to collect the taxes in controversy prior to the reorganization, he could have reached only the equity interest of the iron company in its assets, and since those assets were then mortgaged beyond their value, such procedure would not have resulted in satisfaction of the tax claim. The Government's claim prior to the reorganization was subordinate to the recorded mortgages, and certainly no superior rights accrued to it by reason of the reorganization, under the circumstances described.

Applying the generally accepted trust-fund doctrine and the principles recognized by the Supreme Court in the cases above cited, it is our opinion that under the agreed facts of this case the petitioner is not shown to be liable at law or in equity, as a transferee of property of the taxpayer corporation in respect of any portion of the tax determined against it. Cf. *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401.

*Judgment will be entered for the petitioner.*