**In re BONNER MALL PARTNERSHIP,
Debtor.**

**BONNER MALL PARTNERSHIP,
Appellant/Plaintiff,**

**v.**

**U.S. BANCORP MORTGAGE
COMPANY, Appellee/Defendant.**

**Nos. 92–0023–N–HLR, 92–0046–N–HLR.**

United States District Court,
D. Idaho.

July 15, 1992.

As Corrected July 23, 1992.

Barbara A. Buchanan, Elsaesser Jarzabek & Buchanan, Sandpoint, Idaho, Jerome Shulkin, Shulkin Hutton & Bucknell, Seattle, Wash., for appellant/plaintiff.

Dale G. Higer, Stoel Rives Boley Jones & Grey, Boise, Idaho, Brad Anderson, Stoel Rives Boley Jones & Grey, Seattle, Wash., for appellee/defendant.

## OPINION AND ORDER

HAROLD L. RYAN, District Judge.

### I. FACTS AND PROCEDURE

This matter is currently before this court on appeal from an Order entered by the United States Bankruptcy Court for the District of Idaho on December 6, 1991. Having reviewed the entire record herein, the court determined that the decisional process would be significantly aided by oral argument. Accordingly, a hearing was held July 10, 1992.

The Debtor in this case is the Bonner Mall Partnership, an Idaho general partnership comprised of six partners. The Debtor was formed in 1986 for the purpose of acquiring the Bonner Mall (hereinafter "Mall"), a retail shopping center located on 16 acres of land one mile north of Sandpoint, Idaho, in Bonner County. Northtown Investments constructed the Mall in 1984–85 using a $6.2 million loan from First National Bank of North Idaho. U.S. Bancorp Mortgage Company (hereinafter "U.S. Bancorp") acquired the loan from First National Bank of North Idaho in 1986. The Debtor purchased the Mall from Northtown Investments on October 31, 1986. The Debtor hoped to be able to service the debt with the rental income from the Mall tenants; however, this did not prove to be the case. In July 1990, a Notice of Default and a Notice of Trustee's Sale was filed against the Debtor on account of delinquent real property taxes. Subsequent negotiations between Bonner County, U.S. Bancorp and the Debtor to solve the tax problem and to restructure the debt, broke down. Thereafter, on March 13, 1991, the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code.

U.S. Bancorp filed a motion to dismiss the Chapter 11 proceeding, and also a motion to modify stay, seeking relief from the automatic stay under 11 U.S.C. § 362(a) to enable it to foreclose its security interest in the Bonner Mall. Both motions came on for hearing before the bankruptcy court. On August 23, 1991, the bankruptcy court issued its first Memorandum of Decision. That decision valued U.S. Bancorp's collateral, the Mall, at $3.2 million and initially denied U.S. Bancorp's motions subject to the Debtor filing a plan of reorganization within 30 days. In this first decision, the bankruptcy court did not express any opinion as to the viability of the "new value exception" which is the basis of the present appeal.

On October 31, 1991, the Debtor filed its First Amended Plan of Reorganization. Under the plan, the Debtor is proposing to transfer all of the assets of the Mall to a new entity, Bonner Property, Inc. (hereinafter "Bonner Properties"). The existing partners of the Debtor would contribute to Bonner Properties $200,000.00, plus amounts needed to complete court-ordered repairs. A non-debtor party would also grant to Bonner Properties a collateral trust mortgage on 4500 acres of real property, the value of which seems to be disputed. In exchange for the capital contribution and the real property, the existing partners would receive two million shares of common stock in the corporation.

With respect to the Debtor's liabilities, the Plan provides for the secured portion of U.S. Bancorp's claim, equal to the $3.2 million value of the Mall, to be repaid in a single "balloon" payment after 32 months, with U.S. Bancorp to receive monthly interest payments in the interim. The other secured creditors will also be paid the value of their collateral on a deferred basis. In regard to the unsecured creditors class, of which U.S. Bancorp is also a member, the plan proposes a pro rata distribution of 300,000 shares of Class A preferred stock in Bonner Properties. The shares would have a par value of $1.00 and would be convertible at any time after the payment of U.S. Bancorp's secured claim into a maximum 15 percent of the then outstanding shares of common stock. The preferred stock is given a liquidation preference equal to its par value—$300,000.00.

In response to the First Amended Plan of Reorganization, U.S. Bancorp renewed its motions for relief from stay and dismissal of the case, arguing that the Bankruptcy Code, enacted in 1978, did not retain the new value exception to the absolute priority rule, and therefore, the plan was not

confirmable as a matter of law. After a hearing on the matter, the bankruptcy court issued a second Memorandum of Decision and a separate Order on December 6, 1991. The order granted U.S. Bancorp's motion for relief from stay, and denied U.S. Bancorp's motion to dismiss. The Memorandum of Decision in support of the Order provides in relevant part:

> Since the time of the previous decision on this subject in this case, the Fifth Circuit Court of Appeals in *Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture* has held the new value exception is not available under the Bankruptcy Code. The opinion holds the 1978 Bankruptcy Code did not provide for [the] new value exception to the absolute priority rule. The Court discussed the effect of allowing the exception under the present Code and found that to do so would allow "old equity" to retain control of, and run, the reorganized debtor while impairing the rights of dissenting secured creditors and that such treatment is not authorized and should not be authorized under the present statutes.
>
> The *Greystone* analysis is convincing, as is the reasoning ... in *In re Outlook/Century, Ltd.* As in *Greystone*, to allow the debtor equity holders in this case to retain controlling interest in the new entity while reducing the amount of the [U.S.] Bancorp secured claim and not paying the unsecured claim in full would violate the absolute priority rule.

Memorandum of Decision, filed Dec. 6, 1991, at 4–5 (footnotes omitted).

On December 11, 1991, Debtor filed its Notice of Appeal from the December 6, 1991, Memorandum of Decision and separate Order. On December 11, 1991, the bankruptcy court signed a formal order submitted by U.S. Bancorp. The Debtor filed a second notice of appeal on December 23, 1991, in response to the signing of the formal order. On February 11, 1992, this court issued an order consolidating the appeals.

Having thoroughly considered the briefs submitted herein, along with the entire record on appeal, and the arguments by counsel at the hearing held on July 10, 1992, the court finds that the decision of the Bankruptcy Court should be reversed.

## II. ANALYSIS

### A. *Issue on Appeal*

The sole issue before the court on appeal is whether the enactment of the 1978 Bankruptcy Code revoked the new value exception to the absolute priority rule recognized under the Bankruptcy Act.

### B. *Standard of Review*

■ The bankruptcy court's findings of fact may not be disturbed on appeal unless clearly erroneous. Bankruptcy Rule 8013. However, the bankruptcy court's conclusions of law are reviewed de novo. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

### C. *History of the Absolute Priority Rule and the New Value Exception*

In order for a Chapter 11 plan of reorganization to be confirmed, it must meet the requirements set forth in 11 U.S.C. § 1129. Section 1129(a) sets out these requirements, one of which is that each class of claims must accept the plan. However, there is an exception to this requirement in Section 1129(b). Section 1129(b)(1) provides that if all other requirements for confirmation under Section 1129(a) have been met, the court may confirm a reorganization plan over the objection of an impaired class or classes "if the plan does not discriminate unfairly, and is *fair and equitable*, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C.S. § 1129(b)(1) (1987) (emphasis added).

This fair and equitable standard was created by the courts around the turn of the century. The Supreme Court in *Louisville Trust Co. v. Louisville, N.Albany & Chicago Ry.*, 174 U.S. 674, 19 S.Ct. 827, 43 L.Ed. 1130 (1899), fashioned what has become known as the absolute priority rule. The Supreme Court stated:

> [T]he stockholder's interest in the property is subordinate to the rights of creditors; first of secured and then of unse-

cured creditors. And any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation.

*Id.* at 684, 19 S.Ct. at 830. In essence, "[t]he absolute priority rule requires that a dissenting class of creditors be provided for fully before any junior class may receive or retain any interest in the reorganized firm." *In re SLC LIMITED V,* 137 B.R. 847, 850 (Bankr.D.Utah 1992).

The courts created an exception to this rule, known as the "new value exception." In *Kansas City Terminal Ry. Co. v. Central Union Trust Co.,* 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028 (1926), the Supreme Court explained:

As above stated, to the extent of their debts creditors are entitled to priority over stockholders against all the property of an insolvent corporation. But it does not follow that in every reorganization the securities offered to general creditors must be superior in rank or grade to any which stockholders may obtain. It is not impossible to accord to the creditor his superior rights in other ways. Generally, additional funds will be essential to the success of the undertaking, and it may be impossible to obtain them unless stockholders are permitted to contribute and retain an interest sufficiently valuable to move them. In such or similar cases the chancellor may exercise an informed discretion concerning the practical adjustment of the several rights.

*Id.* at 455, 46 S.Ct. at 551–52.

The fair and equitable language was incorporated into the former Bankruptcy Act in Section 77(b). The Supreme Court in *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), was called upon to decide whether the absolute priority rule and the new value exception had been codified in the Act. The Supreme Court concluded that both had been codified.

It is, of course, clear that there are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor. This Court, as we have seen, indicated as much in *Northern Pacific Ry. Co. v. Boyd, supra,* [228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913)] and *Kansas City Terminal Ry. Co. v. Central Union Trust Co., supra.* Especially in the latter case did this Court stress the necessity, at times, of seeking new money "essential to the success of the undertaking" from the old stockholders. Where that necessity exists and the old stockholders make a fresh contribution and receive in return a participation reasonably equivalent to their contribution, no objection can be made.

*Id.* at 121, 60 S.Ct. 1, 10 (citations omitted) (footnote omitted).

Presently, courts have placed strict conditions on the application of the new value exception.

In order for the new value exception to apply, the contribution made by the equity holder must be: 1) in "money or money's worth"; 2) "reasonably equivalent" in value to the continued participation of the stockholders; 3) "necessary" to the reorganization; 4) a "fresh" contribution to the reorganization.

*In re Sovereign Group,* 142 B.R. 702, 708 (E.D.Pa.1992) (citation omitted).

Section 77(b) was replaced by Section 1129(b) of the Bankruptcy Code enacted in 1978. As stated above, the fair and equitable language has been adopted in this section. The section further provides in part:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

. . . .

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C.S. § 1129(b)(2) (1987).

### D. *In Regard to the Existence of the New Value Exception*

Appellant argues that the new value exception survived the enactment of the 1978 Bankruptcy Code and is still applicable under Section 1129(b). In the bankruptcy court's second Memorandum of Decision, cited above, the court found the Fifth Circuit's decision in *Greystone* "convincing." Subsequent to the bankruptcy court's decision, the Fifth Circuit, upon rehearing of the earlier *Greystone* decision, withdrew the portion of the earlier decision addressing the new value exception to the absolute priority rule. The Fifth Circuit stated: "[T]he bankruptcy court's opinion on the 'new value exception' to the absolute priority rule has been vacated and we express no view whatever on that part of the bankruptcy court's decision." *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture*, 948 F.2d 134, 142 (5th Circuit 1991) (as amended on Petition for Rehearing, per curiam, Feb. 27, 1992). Appellant contends that the withdrawal of the earlier *Greystone* opinion undermines the bankruptcy court's decision, since the bankruptcy court relied so heavily on that opinion. In addition, appellant also cites other circuit and district courts which have stated their belief that the new value exception survived the enactment of the 1978 Bankruptcy Code.

Appellant asserts that under the applicable rules of statutory construction, the new value exception was not eliminated. Specifically, appellant cites *Dewsnup v. Timm*, 502 U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Appellant argues that this case requires the court to construe Section 1129(b) consistent with pre-Code practices, including recognizing the existence of the new value exception.

In addition, appellant argues that the language of the statute is not inconsistent with the new value exception. Specifically, the appellant argues that the use of the word "includes" in Section 1129(b)(2) shows that the statute does not purport to be all inclusive. Section 102(3) states, " 'includes' and 'including' are not limiting...." 11 U.S.C.S. § 102(3) (1985). Therefore, the appellant argues that the statute is not inconsistent with the new value exception.

In response, appellee argues that the Fifth Circuit's withdrawal of its earlier opinion does not undermine the bankruptcy court's decision in the instant case. The appellee points out that the bankruptcy court's decision also adopted the reasoning in *In re Outlook/Century Ltd.*, 127 B.R. 650 (Bankr.N.D.Cal.1991), which held that the new value exception does not exist. In addition, appellee also cites cases from circuit and district courts that support its position that the new value exception no longer exists under the Code.

Appellee further argues that neither the statute nor the legislative history mention a new value exception. Appellee contends that Congress must have known of the new value exception, and, therefore, its silence illustrates its intent to abolish that exception as it relates to Section 1129(b).

Appellee asserts that the language of the statute is unambiguous. Appellee also maintains that the former Bankruptcy Act stated the fair and equitable standard, but failed to furnish a definition. In contrast, appellee argues, the new Section 1129 *defines* "fair and equitable" by setting out the minimum requirements for a plan to be "fair and equitable." Appellee argues that *Dewsnup* is really inapplicable. In *Dewsnup*, the Supreme Court stated, "[o]f course, where the language is unambiguous, silence in the legislative history cannot be controlling." *Dewsnup v. Timm*, 502 U.S. at ——, 112 S.Ct. at 779, 116 L.Ed.2d at 913. Therefore, appellee argues that the language of Section 1129 is unambiguous, and urges the court to adopt the plain meaning of the statute and not construe the statute as consistent with pre-Code practices.

The court notes that the Ninth Circuit has yet to decide whether the new value exception has survived enactment of the Bankruptcy Code. In *Norwest Bank Wor-*

*thington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), the Supreme Court refused to resolve the issue of whether the new value exception survived.

We need not reach this question to resolve the instant dispute. As we discuss, infra ... we think it clear that even if the Los Angeles Lumber exception to the absolute priority rule has survived enactment of the Bankruptcy Code, this exception does not encompass respondents' promise to contribute their "labor, experience, and expertise" to the reorganized enterprise.

Thus, our decision today should not be taken as any comment on the continuing vitality of the Los Angeles Lumber exception—a question which has divided the lower courts since passage of the Code in 1978.

*Id.* at 203 n. 3, 108 S.Ct. at 967 (citations omitted).

■ This issue is essentially one of statutory construction. Since the bankruptcy court's decision, a new opinion has been issued which prescribes new standards for interpreting the Bankruptcy Code. In *Dewsnup,* the Supreme Court stated:

When Congress amends the bankruptcy laws, it does not write "on a clean slate." ... Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.... Of course, where the language is unambiguous, silence in the legislative history cannot be controlling.

*Dewsnup v. Timm,* 502 U.S. at ——, 112 S.Ct. at 779, 116 L.Ed.2d at 912–13 (citations omitted). The *Dewsnup* opinion gives courts new guidelines when attempting to interpret the language of the Bankruptcy Code. The Supreme Court makes it clear that when the language of the Code is somewhat ambiguous, courts should try to construe the language as consistent with pre-Code practices, unless some contrary intent is shown in the legislative history. The language at issue here is ambiguous to a certain extent. No mention is made in the language or the legislative history of the new value exception; yet, various courts have interpreted this language differently and are split on this issue, which illustrates that this language is not as clear as appellee argues. Furthermore, the use of the word "includes" demonstrates that the new value exception is not inconsistent with the language of Section 1129(b), since the requirements put forth are not all inclusive. In addition, there is no evidence in the language of the statute or the legislative history which would indicate the desire of Congress to abandon the new value exception.

Two cases have addressed this issue since the *Dewsnup* opinion was handed down, and both have found that the new value exception survives. In *In re Sovereign Group, supra,* the court stated:

On the other hand, the statutory language appears to be less clear in light of the fact that the new value exception is a judicially created exception which was in full use prior to the enactment of the Code in 1978. Where Congress intends for legislation to change the interpretation of judicially created concepts, it makes that intent specific; absent such specific intent, it is presumed that Congress did not intend to change prior-existing law. *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986).

Additionally, the Supreme Court recently reasserted the significance of bankruptcy practice prior to the passage of the Code and the Court's unwillingness to interpret the Code in a manner contrary to pre-Code practice.... *Dewsnup v. Timm,* 502 U.S. ——, ——, 112 S.Ct 773, 779, 116 L.Ed.2d 903 (1992) (citations omitted). This court is likewise hesitant to read the Code in contravention of pre-Code practice and will not hold that the new value exception has been extinguished.

*Id.* 142 B.R. at 916.

In *In re SLC LIMITED V, supra,* the bankruptcy court also held that the new value exception survived the enactment of the 1978 Bankruptcy Code.

Section 1129(b)(2) references some of the requirements of the "fair and equitable" standard, but on its face, it does not statutorily exclude nor eliminate the new value exception to the absolute priority rule. The use of the term "includes" also indicates that the requirements set forth in section 1129(b)(2)(B) are not limited to those indicated in that section.

*Id.* 137 B.R. at 852.

The court reiterated the *Dewsnup* analysis, and stated:

Likewise, congressional silence regarding codification of the new value exception cannot be interpreted as eliminating a substantial, judicially created exception to the absolute priority rule especially when § 1129(b)(2) is not ambiguous on its face.

. . . .

Absent a showing of specific intent to change the judicially created new value exception, especially considering the plain language of the statute, it is not necessary in this case to "venture into the thicket of legislative history" to determine the scope of § 1129(b)(2)....

. . . .

Furthermore, the notion that the definition of "fair and equitable" is no longer a matter of common law and that section 1129(b)(2) "defines" it expressly is not supported by the legislative history.

*Id.* at 853–54 (citations omitted).

The Fifth Circuit's withdrawal of the portion of the earlier *Greystone* decision addressing the new contribution exception to the absolute priority rule further illustrates the trend after *Dewsnup* to interpret Section 1129(b) as consistent with pre-Code practices. Although the Fifth Circuit's decision to withdraw the earlier portion does not state whether it was influenced by the Supreme Court's decision in *Dewsnup*, the dissenting judge on rehearing seemed to imply that it did. "How one should approach issues of a statutory construction arising from the Bankruptcy Code has been clouded, in my view, by *Dewsnup v. Timm....*" *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture*, 948 F.2d at 142 (Jones, J., dissenting).

In addition, the language of the Code must be read in light of the underlying bankruptcy principles. "[C]ontinued application of the new value exception comports with the policy underlying Chapter 11 reorganizations. The purpose of Chapter 11 is to successfully rehabilitate the Debtor. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 527 [104 S.Ct. 1188, 1196, 79 L.Ed.2d 482] (1984)." *In re Sovereign Group*, 142 B.R. 702, 708 n. 9.

In conclusion, the court finds that the new value exception to the absolute priority did survive the enactment of the 1978 Bankruptcy Code. This interpretation of the Bankruptcy Code is consistent with the guidelines enunciated in *Dewsnup*, as well as the underlying policy of Chapter 11.

Lastly, in clarifying the issues on appeal, the court finds that the single issue before the court is whether the judicially created new value exception to the absolute priority rule survived the enactment of the 1978 Bankruptcy Code. Although the appellee has briefed the issue of confirmation, the court will not address this issue on appeal. Confirmation of the plan proposed by the Debtor must be addressed by the bankruptcy court on remand.

### III. ORDER

Based upon the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the Order of the bankruptcy court filed December 6, 1991, should be, and is hereby, REVERSED, and the case is REMANDED to the bankruptcy court for proceedings consistent with this opinion.