**In re NOLEN TOOL COMPANY, Debtor.**

**Bankruptcy No. FS 84–151M.**

United States Bankruptcy Court,
W.D. Arkansas,
Fort Smith Division.

May 30, 1985.

Isaac A. Scott, Jr. and John R. Tisdale, Little Rock, Ark., for debtors.

Robert Y. Cohen, Fort Smith, Ark., for City Nat. Bank.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On January 8, 1985, the debtor-in-possession, Nolen Tool Company, filed its amended plan of reorganization. A confirmation hearing was held in Fort Smith, Arkansas, on the 27th day of February, 1985. City National Bank, which is a Class VII secured creditor, filed a written objection to confirmation and also voted to reject the plan. All other classes of creditors voted to accept the plan except Class IX, which was First Continental Bank of Oklahoma City, through its assignee, the Federal Deposit Insurance Corporation (FDIC).

For a plan of reorganization under Chapter 11 to be confirmed, the requirements of 11 U.S.C. § 1129 must be met. This section has 11 prerequisites for confirmation and all must be met except 11 U.S.C. § 1129(a)(8) which provides that each class must accept the plan or be unimpaired. A plan may still be confirmed over the dissent of one or more classes of impaired claims if the plan nevertheless satisfies all other requirements of 11 U.S.C. § 1129(a) and the cramdown standards set forth in 11 U.S.C. § 1129(b).

In addition to the consideration of objections raised by creditors, the Court has a mandatory independent duty to determine whether the plan has met all the requirements necessary for confirmation. *In re Coastal Equities, Inc.,* 33 B.R. 898 (Bkrtcy.S.D.Cal.1983); *Matter of Nikron,*

*Inc.*, 27 B.R. 773 (Bkrtcy.E.D.Mich, S.D. 1983); *In re Maxim Industries, Inc.*, 22 B.R. 611 (Bkrtcy.D.Mass.1982); *In re Economy Cast Stone Co.*, 16 B.R. 647 (Bkrtcy.E.D.Va., Richmond D.1981).

The City National Bank raises several objections. The bank argues that the plan does not comply with the requirements of the cramdown provision as contained in 11 U.S.C. § 1129(b)(2)(A)(i)(I) and (II), and (b)(2)(A)(iii). The requirement that the plan be fair and equitable to a dissenting class of secured creditors, includes the following:

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

.    .    .    .    .

(iii) for the realization by such holders of the indubitable equivalent of such claims.

This section requires a plan to pay the equivalent of the present value of a fully secured claim, if it is impaired. The evidence was undisputed that both City National Bank and the FDIC have fully secured claims. City National Bank's claim exceeds $1,000,000 and FDIC's claim is in excess of $193,000. In this case the plan proposes to pay the full amount of City National Bank's claim and the claim of FDIC in annual principal installments over 10 years with interest computed at the rate of 10 percent per annum. The evidence was that the market rate of interest was 13 percent per annum. It is undisputed that both claims are impaired. The plan, therefore, does not propose to pay the present value of these claims.

■ 5 *Collier on Bankruptcy* ¶ 1129.-03(4)(f)(i) (15th Ed.1981), describes present value as follows:

The concept of "present value" is of paramount importance to an understanding of section 1129(b). Simply stated, "present value" is a term of art for an almost self evident proposition: a dollar in hand today is worth more than a dollar to be received a day, a month or a year hence. Part of the "present value" concept may be expressed by a corollary proposition: a dollar in hand today is worth exactly the same as (i) a dollar to be received a day, a month or a year hence plus (ii) the rate of interest which the dollar would earn if invested at an appropriate interest rate.

The appropriate interest rate referred to by the Code is the current market rate. *Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983); *In re Roxbury Residential Associates, Inc.*, 35 B.R. 348 (Bkrtcy.D.Conn.1983); *In re Snedaker*, 32 B.R. 29 (Bkrtcy.S.D.Fla.1983); *In re Connecticut Aerosols, Inc.*, 31 B.R. 883 (Bkrtcy.D.Conn.1983); *In re Sullivan*, 26 B.R. 677 (Bkrtcy.W.D.N.Y.1982); *Matter of Landmark at Plaza Park Limited*, 7 B.R. 653 (Bkrtcy.D.N.J.1980). *Klee*, "All You Ever Want to Know About Cramdown Under the New Bankruptcy Code," 53 *American Bankruptcy Law Journal* pp. 133, 156.

■ As to the claim of City National Bank and FDIC the plan also does not grant to these creditors the *"indubitable equivalent"* of their prepetition claims. FDIC has a first lien on all of the debtor's accounts receivable while City National Bank holds a second lien on them. City National Bank also holds a first lien on the debtor's equipment and various security interests in property owned individually by the equity security holders of the debtor, Wallace and Julia Nolen. Presently, both of these creditors are substantially oversecured not considering the value of the Nolens' individual property. The plan proposes to pay each in full in annual installments over 10 years and provides that each credi-

tor "retain its lien." No lien on after-acquired property is granted to either and, therefore, 11 U.S.C. § 552 will act to diminish over the years the quality of the secured position of each creditor. Section 552 cuts off prepetition lien rights in after-acquired property, except proceeds, product, offspring, rents or profits to the extent provided for in the security agreement. It is not clear, for instance, whether a prepetition lien will extend to postpetition accounts receivable. Compare *In re Texas Tri-Collar, Inc.*, 29 B.R. 724, 8 C.B.C. 970 (Bkrtcy.W.D.La.1983) with *In re Aerosmith Denton Corp.*, 36 B.R. 116 (Bkrtcy. N.D.Tex., Dallas D.1983). In 4 *Collier on Bankruptcy* ¶ 552.02, it is stated:

> ... It must be emphasized, however, that subsection (b) creates an exception for *proceeds* [emphasis supplied] generated by prepetition collateral, and not for after-acquired property, other than proceeds, product, offspring, rents, and profits, that would otherwise be collateral under a security agreement.

Other valuable security requirements, a breach of which prepetition constituted an act of default, were contained in the loan agreement entered into between the debtor and City National Bank. These rights are not given to the bank under the plan. "Fair and equitable" does not contemplate the restructuring of City National Bank's debt under Chapter 11 over a ten year period against its objection without requiring the debtor to provide rights substantially similar to the rights in the prepetition loan agreement that are commercially reasonable under the circumstances. Under Chapter 7 City National Bank would be paid in full at once. The present value of this debt may be arrived at by adding the market rate of interest to the debt. It would be less than the indubitable equivalent of payment in full now, to require City National Bank to endure unreasonable risks of becoming undersecured because its collateral becomes obsolete or converted to a form of after acquired property of a

different description which eludes their prepetition lien. All of this results in City National Bank's postconfirmation lien being secured by collateral not of an equivalent value. *See* 5 *Collier on Bankruptcy* ¶ 1129.03 (15th Ed.1981). The comments of Judge Leanned Hand in *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2nd Cir.1935) are particularly appropriate here:

> It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

The plan also obliquely restructures the debtor-creditor relationship between City National Bank and Wallace and Julia Nolen, the equity security holders of the debtor. An Order was entered, at a previous hearing pursuant to the authority of 11 U.S.C. § 105(a) specifically restraining the bank from foreclosing its lien in the Nolen homestead on the basis that such action would bring unfair leverage to bear against the Nolens before they had an opportunity to file a proposed plan on behalf of the corporation. However, this Order was not intended by the Court to be permanent. The plan does not provide for either a continuation or termination of this Order.

The plan implies that Wallace and Julia Nolen are free to liquidate those individual assets which are encumbered by liens in favor of City National Bank. Those assets secure both personal debts and corporate debts for which the Nolens are personally liable. The plan also implies that the Nolens are free to determine unilaterally the respective application of payments made pursuant to the plan without regard to the

bank's rights under state law. Since the Nolens have not sought individual relief under the provisions of Chapter 11 or any other Chapter under Title 11 of the United States Code, it is improper to restrict in this way the bank's remedies against the Nolens, individually.

The Court expressed concern at the confirmation hearing regarding the treatment of Class XII which is the class of interest holders, Wallace and Julia Nolen. The Court stated that the plan did not comply with 11 U.S.C. § 1123(a)(2) and (3) with regard to Class XII because it did not provide any treatment of the claims of this class. Upon closer examination of the plan, the Court finds itself in error, because the plan does treat the claims in Class XII. However, the treatment as contained in the plan is inadequate. All that is provided is "the value, if any, of the interest of Class XII holders shall continue." A more descriptive narrative is necessary.

City National Bank also made the argument that the plan is not feasible, and considerable evidence was heard in that regard. Since the plan cannot be confirmed for the previously stated reasons, and because the Court anticipates a subsequent plan, or a substantial modification of the existing plan, it makes no sense to consider feasibility except in the context of a new or modified plan.

Other objections were raised by City National Bank in its pleadings. The Court has considered these objections but finds it unnecessary to discuss them separately. In the event a new or modified plan is proposed, these objections will be considered upon proof presented if they are still at issue.

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that confirmation be and hereby is denied. This case shall be dismissed unless within 30 days a party in interest files with the Clerk of the Court a new or substantially modified plan of reorganization consistent with the Court's findings.