**In re GENESEE CEMENT, INC., Debtor.**

**Bankruptcy No. 82–00422.**

United States Bankruptcy Court, E.D. Michigan, S.D.

July 12, 1983.

Dennis M. Haley, Flint, Mich., for debtor.

MEMORANDUM OPINION DENYING APPROVAL OF AMENDED DISCLOSURE STATEMENT

STANLEY B. BERNSTEIN, Bankruptcy Judge.

*Issue:*

The debtor has filed an amended plan of reorganization which provides that the

claims of unsecured creditors will be impaired and the equity security holder, the 100% shareholder, will retain its interest. Must the disclosure statement explain that unless the impaired class of holders of unsecured claims accepts the plan, the debtor's plan cannot be confirmed under 11 U.S.C. § 1129(b)(2)(B)(ii) because it would violate the "fair and equitable" test?

*Factual Background*

The amended disclosure statement explains that the debtor, a Michigan corporation, was formed in 1957 and is a wholly-owned subsidiary of the Palmer Corporation. The debtor owns and presently operates a cement block plant. Prior to the filing of its Chapter 11 petition, the debtor also operated a redi-mix cement plant as a lessee from its parent corporation. During the Chapter 11 case, the Court approved a sale by the parent corporation (and a termination of the lease) of the redi-mix concrete division.

The economic performance of the debtor during the Chapter 11 has been—positive although marginal. Its net income from the petition date, April 22, 1982, through March of 1983 is approximately $40,000. This is a significant improvement over the pre-petition losses of $220,762 in 1982 and $409,907 in 1981. The debtor has, moreover, paid its secured debt as well as post-petition taxes and trade payables on a current basis.

The pre-petition obligations include a Michigan single business tax liability of $4,025.00, allowed unsecured claims of $93,-058.48, and unpaid fees to the debtor's counsel of approximately $6,000, subject to approval by the Court.

The plan proposes to pay the pre-petition tax over six years from the date of assessment, a 10% dividend to unsecured creditors, and allowed pro-petition debts in full upon confirmation. The debtor has also disclosed an estimated tax loss carry forward of $405,312 to shelter future taxable income.

Finally, under the plan, the parent corporation as the sole equity security holder is to retain its interest.

The amended disclosure statement also sets forth a detailed liquidation analysis, including appraisals of assets and projection of sales.

*Analysis:*

The rub in this amended disclosure statement is the debtor's contention, explicitly set forth in that statement, that because the reorganized corporation will have a negative net worth—the secured debt exceeds the forced sale value of the collateral, the value of the interest of the equity security is zero; therefore, the equity security holder "will have recovered nothing under the plan." For this reason the debtor argues that a cram-down against the nonaccepting impaired class of unsecured creditors will not offend the "fair and equitable" test of 11 U.S.C. § 1129(b)(2)(B)(ii).

This Court disagrees with the debtor's disingenuous construction of 11 U.S.C. § 1129(b)(2)(B)(ii). First a literal reading of 11 U.S.C. § 1129(b)(2)(B)(ii) is absolute on its face: the equity security holder cannot *"receive* or *retain"* any property on account of its interest under the plan of reorganization if the impaired class of unsecured creditors does not accept the plan. This is simply a matter of equity and public policy; the equity security holder, as proponent of the plan, cannot both discount and discharge prior claims and also retain its ownership interest in the reorganized company unless the unsecured creditors affirmatively accept that treatment. Otherwise the holder of a junior interest would succeed in subordinating a legal claim entitled to priority as a matter of state law. It is too basic a maxim to bear repetition that an equity security holder's interest can only be retained if trade creditors' claims are fully paid.[1]

---

1. For construction of the predecessor acts, see *Louisville Trust Co. v. Louisville, N.A.C. Ry. Co., et al.,* 174 U.S. 674, 19 S.Ct. 827, 43 L.Ed. 1130 (1899); *Northern P.R. Co. v. Boyd,* 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913); *Case v. Los Angeles Lumber Products Co. Ltd,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939);

Secondly, this Court is very skeptical that the present discounted value of the interest of the equity security holder is zero. To reach that result, the debtor relies upon a forced sale, rather than fair market value, of the corporation's tangible assets. That has the practical effect of deflating the value of the interest of the equity security holder. More importantly, the very large tax loss carry-forward should be taken into consideration. The expected profits of the company will be sheltered, as the debtor candidly admits. For these reasons the liquidation analysis as it reflects on the value of the equity security holder's interest is seriously misleading.

Thirdly, the retained interest of the equity security holders has a value measured in terms other than net worth. As noted in *Boyd, supra,* there is "value" in the retention by the equity security holder of *control* of the reorganized company.

In light of the foregoing, the Court cannot approve the amended disclosure statement in its present form. The Court is, however, disposed to approving a second amended disclosure statement, without further hearing or notice to creditors, provided that 11 U.S.C. § 1129(b)(2)(B)(ii) is properly explained, and the alternatives facing the unsecured creditors, including the consequences of denial of confirmation, are also properly explained. The Court is cognizant of the fact that this opinion requires the debtor to waive a red cape at the impaired unsecured creditors. Full disclosure providing adequate information so that unsecured creditors can make an informed choice is always painful and risky. If the debtor expects to persuade the unsecured creditors to waive 90% of their allowed claims, it must bite that bullet.

The debtor's application for approval of its amended disclosure statement is DENIED.

*Sophian v. Congress Realty Co.,* 98 F.2d 499, 502 (8th Cir.1938).

For construction of the Code, see *In re Landau Boat Company,* 8 B.R. 436, 4 C.B.C.2d 207 (Bkrtcy.W.D.Mo., 1981). One may also consider Klee, "All You Ever Wanted to Know about Cram Down under the New Bankruptcy Code," 53 Amer.Bankr.L.J. 133, 143–50 (Spring 1979). As an antidote to too heavy a reliance on the principal draftsmen's "inside story," see, generally, " 'Builded better than they knew': the framers, the railroads and the Fourteenth Amendment," in Graham, *Everyman's Constitution* (1968).