**In re Ronald L. PECHT, t/a Pecht's Firewood, a proprietorship, Debtor.**

**Bankruptcy No. 84–00895–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Oct. 8, 1985.

James R. Sheeran, Richmond, Va., for debtor.

Debera Frick, Office of U.S. Trustee, Norfolk, Va., for U.S. Trustee.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on a hearing to approve the disclosure statement of the debtor, Ronald L. Pecht, pursuant to 11 U.S.C. § 1125(b). After an examination of the proffered disclosure statement and the plan of reorganization to which it pertains, and upon the representations of counsel, this Court makes the following findings and conclusions of law.

STATEMENT OF THE CASE

The debtor, Ronald L. Pecht ("Pecht"), filed a petition under Chapter 13 of the Bankruptcy Code on June 22, 1984. However, Pecht's case was converted to one under Chapter 11 because his unsecured liability exceeded the permissible limitations imposed on Chapter 13 by 11 U.S.C. § 109(e).[1] This matter is before the Court pursuant to 11 U.S.C. § 1125(b), which requires a debtor after court approval to provide a disclosure statement containing adequate information to his creditors be-

---

1. 11 U.S.C. § 109(e). A debtor must have noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 on the date of filing his petition to be eligible for relief under Chapter 13.

fore votes on the plan of reorganization can be solicited.[2]

Pecht is the sole proprietor of a business known as "Pecht's Firewood," an offshoot of an operation which originated as a partnership between Pecht and his brother, Charles Pecht, in 1976. The two brothers operated "Pecht's Power Equipment" for a year or so, until they also went into the retail sale of gasoline. The partnership between the two added an entity known as "Pecht's Gas," although it operated out of the same facility as Pecht's Power Equipment. During the time that the brothers operated Pecht's Gas, Ronald Pecht began cutting, splitting, and selling firewood to supplement his income, since the funds generated from the gasoline and power equipment sales were inadequate to support his family. In 1980, the profitability of Pecht's Power Equipment and Pecht's Gas began to diminish, and Pecht began focusing on his firewood business which was his own venture separate from the partnership. Pecht obtained a $20,000 loan from Freedlander Mortgage secured by a first deed of trust on his home to pay off the unsecured creditors of the partnership entered into with his brother. Pecht asserts that by May of 1984 Pecht's Power Equipment was insolvent and the partnership was dissolved, leaving Pecht with partnership debts and his sole source of income being Pecht's Firewood. Charles Pecht filed a Chapter 7 petition on August 30, 1984, and he received a discharge on January 8, 1985. There may be insufficient assets in that estate which will result in no distribution to the Pecht brothers' joint creditors. Ronald Pecht chose to file a petition under Chapter 11 because he asserts that the value of his proprietorship interest in Pecht's Firewood exceeds the amount he could claim exempt under the Code in Chapter 7.

Pecht's Firewood operates by gleaning the remaining timber from parcels of cut over timberland, and subsequently preparing the land for reforestation. Pecht asserts this operation is now his sole means of support. In attempting to put forth a plan of reorganization under Chapter 11, Pecht is required to submit a disclosure statement containing adequate information to allow his creditors to make an informed decision on how to vote on such a plan. 11 U.S.C. § 1125(b). It is pursuant to an examination of the disclosure statement and Pecht's proposed plan that this Court makes the following conclusions of law.

## CONCLUSIONS OF LAW

This opinion is prefaced by the conclusions reached in *In re McCall,* 44 B.R. 242 (Bankr.E.D.Pa.1984); *In re Kehn Ranch, Inc.,* 41 B.R. 832 (Bankr.D.S.D.1984) and *In re Genesee Cement, Inc.,* 31 B.R. 442, 10 B.C.D. 1212 (Bankr.E.D.Mich.1983) which provide that if the disclosure statement does not adequately explain the provisions of a plan of reorganization, or if the disclosure provides that the plan is not in compliance with 11 U.S.C. § 1129,[3] the court can decline to approve the disclosure statement. In *Kehn Ranch,* the court stated that it would not proceed with the time consuming and expensive proposition of hearings on a disclosure statement and plan where the plan by its terms is not confirmable. *Kehn Ranch,* 41 B.R. at 832, 833. Thus, a clear showing in a proffered disclosure statement that the plan could not be confirmed justifies a court in denying approval of the disclosure. Submitting the debtor to the attendant expense of soliciting votes and seeking court approval on a clearly fruitless venture would be costly

---

**2.** 11 U.S.C. § 1125(b). An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

**3.** Section 1129 of the Bankruptcy Code outlines the requirements for confirmation of a plan of reorganization under Chapter 11.

and it would unduly delay any possibility of a successful reorganization.

The crux of the case at bar is the proposed nondistribution of funds to any of Pecht's unsecured creditors. The disclosure statement notes that of Pecht's total debt, general unsecured claims equal $103,877.50 and under secured claims equal $18,350.13, creating a total unsecured indebtedness of $122,227.70. The problem confronting Pecht under this no-payment plan is that when a class of creditors receives nothing under a Chapter 11 plan, the Bankruptcy Code deems that class to have rejected the plan. 11 U.S.C. § 1126(g).[4] As a result, Pecht's unsecured creditors are deemed not to have accepted his plan, and § 1129(a)(8) of the Code requires each class in the plan which is impaired to accept the plan, or in the alternative, if an impaired class does not accept the plan, then confirmation can be obtained only by enacting the "cram-down" provisions of 11 U.S.C. § 1129(b).

Under § 1129(b), if all of the elements required for confirmation other than § 1129(a)(8),[5] are present, the court must confirm the plan if it does not discriminate unfairly, and it is "fair and equitable" to each class of claims that have not accepted the plan. 11 U.S.C. § 1129(b)(1). Included among the definitions of what constitutes fair and equitable treatment for unsecured claims is a provision which requires that no class junior to the objecting class receive or retain any property under the plan.[6] 11 U.S.C. § 1129(b)(2)(B)(ii). Pecht, while proposing to pay his unsecured creditors noth-

ing, will retain his entire proprietary interest in Pecht's Firewood. Thus, the question before this Court is whether or not an interest in a sole proprietorship constitutes an interest under § 1129(b)(2)(B) which would bar cram-down, because a junior class to a class that receives nothing is retaining a property interest.

■ It is well established that a stockholder in a corporation paying nothing to its unsecured creditors under a plan cannot retain his equity interest in the corporation and effectuate cram-down. *In re Genesee Cement*, 31 B.R. 442, 10 B.C.D. 1212 (Bankr.S.D.Mich.1983); *see also In re Toy and Sports Warehouse, Inc.*, 37 B.R. 141, 152 (Bankr.S.D.N.Y.1984); *Matter of Huckabee Auto Co.*, 33 B.R. 132, 141 (Bankr.M.D.Ga.1981). The court in *Genesee* considered § 1129(b)(2)(B) in considerable detail, and it gave great weight to the Code section's literal terms. The equity holder cannot *"receive* or *retain"* (emphasis in original) any interest under the plan of reorganization if the impaired class of unsecured creditors does not accept the plan. *Genesee*, 31 B.R. 442, 10 B.C.D. at 1213.

In *Genesee*, the plan proposed to pay a 10 percent dividend to unsecured creditors in full upon confirmation of the plan and the equity security holder was to retain its interest in the debtor. The disclosure statement explicitly set forth that because the reorganized corporation would have a negative net worth the value of the interest of the equity security holder was zero and, therefore, the equity security holder would

---

4. 11 U.S.C. § 1126(g).

(g) Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

5. 11 U.S.C. § 1129(a)(8).

(a) The court shall confirm a plan only if ...
(8) with respect to each class of claims or interests—
(A) such class has accepted the plan; or
(B) such class is not impaired under the plan.

6. 11 U.S.C. § 1129(b)(2)(B)(ii).

(2) For the purposes of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
(B) with respect to a class of unsecured claims

. . . . .

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

have recovered nothing under the plan. The Court disagreed with the debtor's construction of 11 U.S.C. § 1129(b)(2)(B)(ii) stating that a literal reading of that section is absolute on its face, that the equity security holder cannot *receive* or *retain* any property on account of its interest under the plan of reorganization if the impaired class of unsecured creditors does not accept the plan. *Id.*

In reaching its decision the *Genesee* court was also skeptical that the present discounted value of the interest of the equity holder was zero. The debtor had relied upon a forced sale value rather than a fair market value of the tangible assets, but more importantly it said that the retained interest of the equity security holder has a value measured in terms other than that of net worth. It said there is "value" in the retention by the equity security holder of control of the reorganized company. *Id.*

Because of these deficiencies in the disclosure, the *Genesee* court declined to approve the amended disclosure statement but was inclined to approve an amended disclosure statement without further hearing or notice to creditors on the condition that § 1129(b)(2)(B)(ii) be properly explained and the alternatives facing the unsecured creditors, including the consequences of a denial of confirmation, are also properly explained.

In the case at hand a class of unsecured creditors are precluded from either accepting or rejecting the plan, for as a matter of law under 11 U.S.C. § 1126(g), the unsecured creditors are deemed not to have accepted the plan because they receive no distribution thereunder. Under that condition, if the debtor retains any interest in the sole proprietorship confirmation would be impossible. The debtor may well contend that he retains no interest because of the sole proprietorship nature of his existing business.

It is also well established that limited partners and general partners of a partnership are treated as holders of equity interests under § 1129(b)(2)(B). *In re Pine Lake Village Apartment Co.*, 19 B.R. 819,

832 (Bankr.S.D.N.Y.1982). Further, in accordance with the requirements of 11 U.S.C. § 1129(b)(2)(B)(ii), the general and limited partners of a partnership cannot receive or retain any interest in property unless the dissenting class of unsecured creditors receive "property of a value, as of the effective date of the plan, equal to the allowed amount of such claim ..." *Id.* at 832, 833; 11 U.S.C. § 1129(b)(2)(B)(i). However, the impaired creditors could consent to their treatment under the plan by an affirmative vote under § 1129(a)(8) which would dispose of the necessity for imposition of the stringent requirements of § 1129(b)(2)(B). In other words, a non-accepting senior class of unsecured creditors *must* be paid in full if a junior class is to retain or receive any property. The question now is whether or not the treatment accorded corporate stockholders and partners in a partnership should be extended to a holder of a proprietorship interest in a sole proprietorship. This Court answers the question in the affirmative.

The legislative history of § 1129(b)(2)(C) indicates that "interest" may include the interest of general or limited partners in a partnership, the interest of a sole proprietor in a proprietorship, or the interest of a common or preferred stockholder in a corporation. 124 Cong.Rec. H11, 105 (Daily Ed. Sept. 28, 1978); S17,421 (Daily Ed. Oct. 6, 1978); *Collier on Bankruptcy* ¶ 1129.03 (15th ed. 1985). For purposes of cramdown under § 1129(b)(2)(B), this Court cannot see any rational reason for separation of a proprietorship interest from that of the treatment of partners and stockholders and their respective entities. It would be completely inequitable for Pecht to retain the entire value of his proprietorship interest, especially when his unsecured creditors are receiving no payment at all. Were it otherwise, nothing would preclude a single stockholder corporation from dissolving itself prior to bankruptcy, or even as part of a plan of reorganization, and allowing the sole stockholder to retain management and control of the business to the detriment of the impaired non-accepting class. In *Gene-*

*see* the court stated "it is too basic a maxim to bear repetition that an equity security holder's interest can only be retained if a trade creditor's claims are fully paid." *Genesee*, 31 B.R. 442, 10 B.C.D. at 1213. The fact that the interest may, in a net worth sense, be worthless does not mean that there is no value or property retained. *Id. See also Matter of Huckabee Auto Co.*, 33 B.R. 132, 141 (Bankr.M.D.Ga.1981). It is the control of the reorganized entity which is a valuable asset, and that asset should not be passed on to the junior class when a senior class, in this case the unsecured creditors, receives nothing.

In light of the foregoing, this Court cannot approve the amended disclosure statement. However, this is not to say that confirmation is impossible if the debtor provides for unsecured creditors and the requirements of § 1129(a)(8) are met. The structure of Chapter 11 requires an intent of the debtor to negotiate with creditors in order to effect reorganization.[7] He must balance the risk of having no business against the amount he might think is sufficient to assure an affirmative vote of the impaired unsecured creditors. If he can cajole or convince the unsecured creditors to vote for a plan, the mandate of § 1129(b)(2)(B)(ii) need not be imposed. If he cannot, then confirmation becomes an impossibility.

Any disclosure statement under the facts of this case would of necessity require the explanation of the imposition of § 1129(b)(2)(B), including the alternatives facing the unsecured creditor and the consequences of a denial of confirmation. As the court in *Genesee* noted, such a statement waves a "red cape" at the impaired unsecured creditors, but "[f]ull disclosure providing adequate information so that unsecured creditors can make an informed choice is always painful and risky." *Genesee*, 31 B.R. 442, 10 B.C.D. at 1213. If the debtor expects his unsecured creditors to take nothing away from this reorganiza-

tion, he must be willing to take nothing also. In any event, because the disclosure describes a plan which cannot be confirmed, the disclosure statement should not be approved.

An appropriate Order will issue.

---

7. For a general discussion of the mechanics and nuances of 11 U.S.C. § 1129(b) *see* Klee, *All You Ever Wanted To Know About Cram Down Under* *The New Bankruptcy Code,* 53 Am.Bankr.L.J. 133 (Spring 1979).