**In re STAR CITY REBUILDERS, INC. t/a Starco Corporation, Debtor.**

**Bankruptcy No. 7–85–01126–R.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

July 22, 1986.

Bird, Kinder & Huffman, Roanoke, Va., for debtor.

John H. Kennett, Jr., Roanoke, Va., for Harry Bunn.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is confirmation of the Debtor's Chapter 11 Plan.

The Debtor, Star City Rebuilders, Inc., filed its Chapter 11 petition with the Court on October 4, 1985. The Debtor's amended Chapter 11 Plan proposes a payment of $432,000.00 over a period of five years and delineates eight classes of creditors. Under the Plan, all administrative costs and expenses and secured creditors are to be paid in full. Class Seven, consisting of general unsecured creditors without priori-

ty, "shall each be paid their *pro rata* share but not less than $100.00 (or the full principal amount of their claim if less than $100.00) from a fund of $31,200.00. This fund should yield unsecured creditors not less than 5% of their claims."

Class Eight consists of the interest of holders of common stock of the Debtor corporation. John M. Davis, President of the Debtor, holds 90.2% of the common stock. The remaining 9.8% is held by Eddie Frye. The Plan states that "Class Eight will be impaired in that no payments of dividends to stockholders are contemplated by the Plan. However, they will continue to own stock in the company with whatever future rights may be attendant thereto upon completion of the Plan."

At confirmation hearing, counsel for the Debtor indicated that all members of classes One through Six have accepted the Plan. Of the unsecured creditors, fourteen, with claims totaling approximately $54,000.00, have accepted the Plan; four unsecured creditors, with claims of approximately $269,000.00, have rejected the Plan. The objecting creditor with the largest claim is Harry Bunn, brother-in-law and former partner of John M. Davis in the Debtor corporation. Bunn holds an unsecured claim in the amount of $249,048.00.

At hearing, Debtor's counsel indicated that the corporation's assets, if liquidated, would not yield a sufficient amount to satisfy the secured creditors whose claims exceed $400,000.00, and that unsecured creditors would realize nothing. Under the Plan, the unsecured creditors will realize some payment, with Bunn receiving approximately $15,000.00.

Counsel for Bunn agrees that the unsecured creditors would receive no payment upon liquidation. However, he contends that the Debtor's Plan cannot be confirmed under the cram-down provision of Section 1129(b) over Bunn's objection because the Plan is not fair and equitable as outlined in Section 1129(b)(2)(B).

11 U.S.C. Section 1129 provides for confirmation of a debtor's Chapter 11 Plan.

Section 1129(a) outlines eleven conditions precedent to confirmation.[1] Section 1129(a)(8) requires as a condition to confirmation that each class of claims or interests either accept the Plan or not be impaired under the Plan.

1. Section 1129(a):
(a) The court shall confirm a plan only if all of the following requirements are met:
(1) The plan complies with the applicable provisions of this title.
(2) The proponent of the plan complies with the applicable provisions of this title.
(3) The plan has been proposed in good faith and not by any means forbidden by law.
(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.
(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and
(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and
(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.
(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.
(7) With respect to each impaired class of claims or interests—
(A) each holder of a claim or interest of such class—
(i) has accepted the plan; or
(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or
(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the

plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.
(8) With respect to each class of claims or interests—
(A) such class has accepted the plan; or
(B) such class is not impaired under the plan.
(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
(B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4) or 507(a)(5) of this title, each holder of a claim of such class will receive—
(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and
(C) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.
(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.
(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

2. Under Section 1126(c):
A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by credi-

■ The Debtor's Plan recognizes that the class of unsecured creditors is impaired in that they are to receive only 5% of their claims. Moreover, the class has not accepted the Plan in accordance with the provisions of Section 1126(c).[2] Thus, confirma-

tion in this case must be pursuant to the so-called cram-down provisions of Section 1129(b).

Section 1129(b) provides:

"Notwithstanding Section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a Plan, the court, on request of the proponent of the Plan, shall confirm the Plan notwithstanding the requirements of such paragraph if the Plan does not discriminate unfairly, and is *fair and equitable*, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan." (emphasis added)

Section 1129(b)(2)(B) states that the term "fair and equitable" with respect to a class of unsecured creditors includes [3] the following requirements:

"(i) The Plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

(ii) The holder of any claim or interest that is junior to the claims of such class *will not receive or retain* under the Plan *on account of such junior claims or interest any property.*" (emphasis added)

Counsel for Bunn contends that the fair and equitable standard of Section 1129(b)(2)(B), which would permit confirmation, has not been met in that (1) the unsecured creditors will not receive, as of the effective date of the Plan, property of a value equal to the allowed amount of their claims, and (2) the junior class of stockholders is allowed to retain their stock ownership under the Plan. The Court agrees with this first contention, and the Debtor's Plan clearly indicates that the unsecured creditors would not receive or retain property of a value, as of the effective date of

the Plan, equal to the allowed amount of their claims. The central question in this case is whether the shareholders, by holding their ownership interests, albeit valueless, are in fact receiving or retaining on account of their interest "any property" under Section 1129(b)(2)(B)(ii) such that the Plan cannot be confirmed.

■ Without question, were the Debtor's Plan to provide for partial payment to unsecured creditors, retention of stock by shareholders, *and* distribution of dividends to shareholders during the term of the Plan, the Plan could not be confirmed because the junior class of shareholders would be receiving "property" under Section 1129(b)(2)(B)(ii). Likewise, we believe that it would be impermissible for the shareholders to retain their stock if the corporation were solvent in the balance sheet sense that assets exceed liabilities, for there would be equity in the corporation and the shareholders would be retaining property of value before full payment of unsecured creditors. However, this Court cannot say that mere holding of ownership interests alone, albeit valueless, constitutes retention of property under Section 1129(b)(2)(B)(ii) such that the Plan is not fair and equitable and cannot be confirmed.

We believe that this interpretation is supported by the historical interpretation of the term "fair and equitable" in bankruptcy law. Section 77B(f) of the *Bankruptcy Act* of 1898 provided, in part, that the judge shall confirm the debtor's Plan if satisfied that:

"(1) It is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible ..."

The Supreme Court recognized in *Case v. Los Angeles Lumber Co.,* 308 U.S. 106, 115, 60 S.Ct. 1, 7, 84 L.Ed. 110 (1939), that "the words 'fair and equitable' as used in Section 77B(f) are words of art which

tors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

**3.** 11 U.S.C. Section 102 outlines rules of construction for Title 11 and indicates that the words "includes" and "including" are not limiting.

prior to the advent of Section 77B(f) had acquired a fixed meaning through judicial interpretation in the field of equity receivership organizations",

and that the term included rules of law enunciated by the court in several prior cases. Among these decisions was *Louisville Trust Co. v. Louisville, N.A. & C. Ry. Co.*, 174 U.S. 674, 684, 19 S.Ct. 827, 830, 43 L.Ed. 1130 (1899), in which the Supreme Court recognized the "familiar rule" that "the stockholders' interest in the property is subordinate to the rights of creditors; first of secured and then of unsecured creditors." In *Kansas City Terminal Ry. Co. v. Central Union Trust Co.*, 271 U.S. 445, 455, 46 S.Ct. 549, 551, 70 L.Ed. 1028 (1926), the court reaffirmed this idea and stated further that "to the extent of their debts, creditors are entitled to priority over stockholders against all property of the insolvent corporation." *See also Northern Pacific Ry. Co. v. Boyd*, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913).

In 1938, Congress enacted the *Chandler Act*, 52 Stat. 840, Ch. 575 (1938), which amended the *Bankruptcy Act* and added Chapters X, XI, and XII. Relief under Chapter X was confined to corporations, as under § 77B, and was intended to be the exclusive vehicle for reorganization of corporations with public debtor security holders. Relief under Chapter XI was available to individuals as well as corporations, and was intended to permit smaller enterprises to negotiate composition or extension plans with their unsecured creditors. 124 Cong. Rec. H 11,100–102 (daily ed. Sept. 28, 1978) (remarks of Cong. Edwards); 124 Cong. Rec. S 17,417–419 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini). Chapter XII provided for real property arrangements by persons other than corporations.

The requirement that a plan or arrangement be fair and equitable was carried forward into Chapters X and XI. Chapter X, Section 221, former 11 U.S.C. § 621,

provided in part that "the judge shall confirm a Plan if satisfied that—... (2) the Plan is fair and equitable, and feasible." Likewise, Chapter XI, Section 364, as originally enacted, provided in part that "the court shall confirm an arrangement if satisfied that ... (3) it is fair and equitable and feasible." The question arose as to whether the words "fair and equitable" as interpreted by the Supreme Court in the cases cited *supra* with respect to the relationship between creditors and stockholders had the same fixed meaning in Chapter XI cases involving non-corporate debtors.

In 1952, the *Bankruptcy Act* was further amended by 66 Stat. 433 (1952). Chapter XI, Section 366, was amended by deleting the "it is fair and equitable and feasible" language of paragraph (3), and amending paragraph (2) to include the feasible standard. Identical amendments were also made to Chapter XII, Section 472, regarding confirmation of an arrangement, and Chapter XIII, Section 656(a), regarding confirmation of a Plan. In addition, Congress added a sentence at the end of Section 366 which stated:

"Confirmation of an arrangement shall not be refused solely because the interest of a debtor, or if the debtor is a corporation, the interests of its stockholders or members will be preserved under the arrangement."

Similar language was also included in Section 472 of Chapter XII and Section 656(a) of Chapter XIII.[4]

As the House Committee Report comments accompanying the amendment indicate:

"The language 'fair and equitable' was derived from Section 221(2) of Chapter X, in which for purposes of corporate reorganizations, the requirement is sound and necessary. However, *the fair and equitable rule cannot be applied in a Chapter XI, XII, or XIII proceeding if*

---

**4.** The 1952 amendment to Chapter XII, Section 472, provided that "confirmation of an arrangement shall not be refused solely because the interest of a debtor will be preserved under the arrangement". Similarly, following the 1952 amendment, Chapter XIII, Section 656(a), concluded as follows: "Confirmation of a plan shall not be refused solely because the interest of a debtor will be preserved under the plan."

*constructed as interpreted in Northern Pacific Railway Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913), and reaffirmed in Case v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), without impairing if not entirely making valueless, the relief provided by these chapters. If so applied, no individual debtor or corporate debtor (where stock ownership is substantially identical with management) under Chapter XI,* and no individual debtor under Chapter XII or XIII *can effectuate an arrangement or plan by scaling of debts.*

The fair and equitable rule was never applied in a composition proceeding under the former Section 12 of the *Bankruptcy Act,* which has been replaced by Chapter XI, nor is it practicable or realistic to apply it in a proceeding under Chapter XI, XII, or XIII." (emphasis added)

9 *Collier on Bankruptcy,* ¶ 9.18 at 305 (14th ed. 1978).

By enacting the present *Bankruptcy Code* in 1978, Congress consolidated Chapters X, XI, and XII of the *Bankruptcy Act* into one Chapter, Chapter 11, which permits a debtor to operate its business as a Debtor-in-Possession and to propose a Plan for reorganization which deals with creditors and equity interests. Section 1129(b) has utilized the language "fair and equitable" and provided in subparagraph (b)(2) what the term may include, but is not limited to, with respect to secured creditors, unsecured creditors, and equity interests.

The legislative history indicates that subsection (b) permits confirmation notwithstanding non-acceptance by an impaired class if that class and all below it in priority are treated according to the absolute priority rule. The dissenting class must be paid in full before any junior class may share under the Plan. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 412–418 (1977). As noted in 5 *Collier on Bankruptcy,* ¶ 1129.03[4][e] at 1129–56 (15th Ed.1985), Section 1129(b)(2)(B) is the *Bankruptcy Code's* modification of the *Chapter X* "fair and equitable" rule. However, there is no indication in the extensive legislative history whether the interpretation given to the phrase "fair and equitable" as a term of art by the Supreme Court in *Boyd* and *Case,* and deleted by the 1952 amendments to Chapters XI, XII, and XIII of the *Bankruptcy Act,* is intended to be applied to similar instances of small, closely held corporations under the *Bankruptcy Code.* In fact, the same problem of achieving an effective reorganization recognized by the comments to the 1952 amendments is present in the instant case.

As noted previously, the overwhelming majority of below water stock is held by John M. Davis, President of the Debtor corporation and brother-in-law of the objecting unsecured creditor. Were we to conclude that the valueless shares were "property" for purposes of Section 1129(b)(2)(B)(ii) and require Davis and the other shareholder to surrender their shares, they would no longer have any interest in rehabilitating the corporation, nor any desire to work in the day-to-day operation of the business toward that goal for the five-year period of the Plan. Rather, they would be inclined to liquidate the corporation under Chapter 7, allow the creditors to obtain what little recovery, if any, they may receive, and be done with the matter. Such a result would be contrary to the rehabilitative purpose of Chapter 11 and render its provisions meaningless. We doubt that Congress intended the statute to be given an interpretation which destroys its central purpose, and refuse to do so in this case. The unsecured creditors are having their debts satisfied under the Plan, will receive more than they would under liquidation, and have priority over the shareholders under the terms of the Plan in repayment of their debts.

Moreover, were we to conclude that holding of valueless shares was retention of "property" under Section 1129(b)(2)(B)(ii), it would be impossible to confirm a Plan under the cram-down provisions of Section 1129(b) where unsecured

creditors were being paid less than 100% unless and until the shareholders gave up their shares. Such a result would never occur for, if a debtor were capable of making 100% repayment, there would be no need for being in bankruptcy in the first place.

In reaching this decision, we are cognizant of *In re Landau Boat Co.*, 8 B.R. 436 (Bankr.W.D.Mo.1981), *further hearing* 13 B.R. 788 (Bankr.W.D.Mo.1981), and cases which have relied upon it to reach a contrary conclusion. *See In re Genesee Cement, Inc.*, 31 B.R. 442 (Bankr.E.D.Mich. 1983); *Matter of Huckabee Auto Co.*, 33 B.R. 132 (Bankr.M.D.Ga.1981); *In re Modern Glass Specialists*, 42 B.R. 139 (Bankr. E.D.Wisc.1984); *In re Pecht*, 53 B.R. 768 (Bankr.E.D.Va.1985). In *Landau Boat*, the debtor's Plan provided for 10% repayment to unsecured creditors and, as in the instant case, retention by shareholders of their valueless shares in the corporation. The Bankruptcy Court, relying on language from the *Northern Pacific Railway Co. v. Boyd* Opinion, concluded that retention of such valueless interests constituted receiving property such that confirmation was denied. Given our review of the historical development of the fair and equitable standard, on the facts presented, we reach a different conclusion. The interpretation of the word "property" is a key factor in making a determination under the factual posture of this case. Congress obviously intended a construction of the word "property" to be made in a manner that will aid rehabilitation, which is what Chapter 11 is all about.

Accordingly, for the reasons expressed herein, it is

ADJUDGED and ORDERED

that the Debtor's Plan is confirmed.