In re Jimmy M. BAUGH, Debtor.

Bankruptcy No. PB 84–144M.

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

April 28, 1987.

---

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On June 20, 1984, Jimmy M. Baugh (debtor) filed a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code. The debtor submitted a proposed plan of reorganization, and no creditor voted to reject the plan except Ms. Neale Bearden, who also filed a written objection to confirmation. The debtor orally moved the Court to confirm the plan under the provisions of 11 U.S.C. § 1129(b), and a cramdown hearing was held.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

## I

## BACKGROUND

The debtor is a farmer who resides in Lincoln County, Arkansas. The debtor farms with his father, Marion Baugh, in an informal partnership and also farms separately. The debtor and Marion Baugh do not own land together.

On November 10, 1982, the Arkansas Court of Appeals affirmed a decision of the Chancery Court of Lincoln County, Arkansas, which had ordered the debtor to perform a contract to purchase real property from Neale Bearden.[1] On December 21, 1982, the debtor transferred $73,805.33 cash to his father, Marion Baugh. Subsequently, the real property involved in the specific performance suit was sold at a judicial sale, and on December 7, 1983, a deficiency judgment was entered in favor of Neale Bearden against the debtor for $152,548.00.

On February 19, 1986, this Court entered judgment against Marion Baugh in an adversary proceeding to set aside a fraudulent conveyance and ordered the return of the $73,805.33 transferred to Marion

Charles W. Baker, Little Rock, Ark., for debtor.

C.B. Blackard, III, Pine Bluff, Ark., for Neale Bearden.

1. *Baugh v. Johnson,* 6 Ark.App. 308, 641 S.W.2d 730 (1982).

Baugh on December 21, 1982. The money was ordered returned to the estate for the use and benefit of creditors of the estate. After judgment was entered against Marion Baugh, he repaid the estate the sum of $73,805.33. However, the debtor simultaneously reconveyed the sum of $30,275.00 to Marion Baugh, allegedly to reimburse him for payments made to Simmons Bank in repayment of the debtor's crop loan, on which Marion Baugh had purportedly acted as guarantor.

## II

## THE DEBTOR'S PLAN

The plan proposed to pay all administrative and priority claims in full. The plan divided secured creditors into classes and proposed to pay each secured claim in full, plus interest. The plan divided the unsecured creditors into two classes. Class U-1 consisted of all unsecured creditors except Neale Bearden, who was placed in class U-2. The plan proposed to pay 1% of the allowed claims of class U-1 per year beginning on March 15, 1987, and each March 15 thereafter for a total of five years. Additionally, U-1 claimants were to receive any excess cash remaining after payment to the other creditors required to be paid under the plan, after payment of the necessary living expenses of the debtor, totaling $36,000.00 per annum, and after payment for necessary equipment replacement costs. The plan proposed to pay class U-2 under this same formula but only after creditors in class U-1 were paid in full and without interest.

The plan also proposed that the debtor would continue his farming operations and retain ownership of all property of the estate. According to the plan, confirmation would constitute an extinguishment of all judgment liens against the debtor's property and would preclude any prepetition judgment creditor from levying upon any real or personal property presently in the debtor's possession.

## III

## OBJECTIONS TO CONFIRMATION

■ In order for a chapter 11 reorganization plan to be confirmed the require-

ments of 11 U.S.C. § 1129 must be met. Section 1129(a) lists eleven prerequisites for confirmation, all of which must be met with one exception. Section 1129(b) provides that if all of the requirements of section 1129(a) are met other than section 1129(a)(8), which provides that each class must either accept the plan or be an unimpaired class, a plan may still be confirmed over the dissent of one or more classes of impaired claims if the plan satisfies the cramdown standards set forth in 11 U.S.C. § 1129(b). In addition to considering the objections raised by creditors, the Court has an independent duty to determine whether the plan has met all the requirements necessary for confirmation. *In re Nolen Tool Co.*, 50 B.R. 488 (Bkrtcy.W.D. Ark.1985); *In re Coastal Equities, Inc.*, 33 B.R. 898 (Bkrtcy.S.D.Cal.1983); *In re Maxim Industries, Inc.*, 22 B.R. 611 (Bkrtcy.D. Mass.1982); *In re Economy Cast Stone Co.*, 16 B.R. 647 (Bkrtcy.E.D.Va.1981).

Neale Bearden raises the following four objections to confirmation: (A) that the plan was not proposed in good faith, (B) that the plan does not meet the cramdown requirements of 11 U.S.C. § 1129 because it unfairly discriminates and is not fair and equitable to her claim, (C) that the plan's proposal for the debtor to retain his equity interest without a proposal to pay her unsecured claim in full violates the absolute priority rule, and (D) that the plan is not feasible.

## A

## GOOD FAITH

■ Neale Bearden argues that the plan is not proposed in good faith as required by 11 U.S.C. § 1129(a)(3). Specifically, she complains that the debtor's conveyance of $30,275.00 to Marion Baugh after Marion Baugh followed this Court's order to repay a previous fraudulent conveyance from the debtor is sufficient evidence of bad faith to warrant denial of confirmation. The debtor alleges that the $30,275.00 payment was a proper reimbursement to his guarantor,

Marion Baugh, who had made payment on an authorized loan of the debtor.

The Court, after notice and a hearing, issued an order authorizing the debtor to obtain a crop loan. The order did not specify the terms of the loan or the terms of repayment, and there was no specific authority granting the debtor the right to secure a guarantor for his crop loan. Nevertheless, Marion Baugh apparently guaranteed the debtor's loan from Simmons Bank.

Generally, a crop loan agreement provides for the lender to be repaid from crop proceeds. The debtor offered uncontroverted testimony that the proceeds from the sale of his 1986 crop were not sufficient to repay the crop loan, and that Marion Baugh paid the bank $30,275.00 pursuant to the guaranty. Although this transaction appears suspicious, there was no testimony to contradict the facts as presented. The unauthorized repayment of the unauthorized guaranty is not sufficient evidence of bad faith to constitute denial of confirmation. This objection is overruled.

## B

### UNFAIR DISCRIMINATION

Neale Bearden argues that the plan cannot be confirmed because it places her claim in a class which will not receive any payment until other unsecured creditors are paid in full, and that this discrimination is not fair and equitable to her. 11 U.S.C. § 1129(b)(1) provides, in part, that a plan may be confirmed over the objection of a dissenting class of creditors if the plan does not unfairly discriminate. One commentator states that, "[r]educing 'discrimination' to its bare essentials, a dissident class must not only receive 'fair and equitable' treatment but the class must also receive treatment which allocates value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor." 5 *Collier on Bankruptcy* ¶ 1129.03[3][b] (15th ed. 1986). *See also In re Acequia, Inc.*, 787 F.2d 1352 (9th Cir.1986). The debtor argues that the proposed discrimination does not unfairly discriminate because

Neale Bearden's unsecured claim should be equitably subordinated to the other unsecured creditors pursuant to 11 U.S.C. § 510(c). The debtor argues that subordination is justified because Neale Bearden's claim, a deficiency judgment, is not based on a "real debt," and, therefore, it would not be equitable to pay Neale Bearden on the same priority as other unsecured creditors.

■ Generally, equitable subordination is proper under the Bankruptcy Code if the claimant has engaged in some type of inequitable conduct and the misconduct has resulted in injury to creditors of the debtor or conferred an unfair advantage on the claimant. *In re N & D Properties, Inc.*, 799 F.2d 726 (11th Cir.1986); *In re Poole, McGonigle & Dick, Inc.*, 796 F.2d 318 (9th Cir.1986); *In re Mobile Steel Company*, 563 F.2d 692 (5th Cir.1977); *In re Answerfone, Inc.*, 48 B.R. 24 (Bkrtcy.E.D.Ark. 1985); *In re B & L Laboratories, Inc.*, 62 B.R. 494 (Bkrtcy.M.D.Tenn.1986); *In re Bellanca Aircraft Corp.*, 56 B.R. 339 (Bkrtcy.D.Minn.1985).

■ Equitable subordination is warranted only when a creditor's claim is "ethically inferior" to other claims and when failure to subordinate would increase loss to other creditors. 3 *Collier on Bankruptcy* ¶ 510.-05[2] (15th ed. 1986). Neale Bearden's claim is an award of damages pursuant to a state court judgment, resulting from the debtor's failure to honor a contract for the purchase of real property. The state court judgment did not determine that Neale Bearden was guilty of inequitable conduct.

■ The only other basis for classifying Neale Bearden's claim as junior to other creditors with similar claims is the debtor's obvious antipathy toward this creditor. This is not a proper basis to discriminate. The plan, therefore, unfairly discriminates against Neale Bearden by treating her inconsistently with other general unsecured creditors in violation of 11 U.S.C. § 1129(b)(1). The objection in this regard is sustained.

## C

## CRAMDOWN AND THE ABSOLUTE PRIORITY RULE

■ Neale Bearden's third objection to the plan is that the debtor's proposal to retain his equity interest without paying her unsecured claim in full violates the absolute priority rule. Section 1129(b), which provides that the plan must be fair and equitable to a dissenting class of unsecured creditors, also requires that all classes of unsecured creditors must be paid in full before any junior class of creditors, including claims of interest, receives any distribution or retains any interest in property under a confirmed plan. 11 U.S.C. § 1129(b)(2)(B)(i) and (ii).[2] This requirement is referred to as the absolute priority rule. The absolute priority rule was originally based on the equitable principle that a claim of a creditor should have a priority over the claim of a stockholder's interest in property of an insolvent corporation. *Louisville Trust Co. v. Louisville, N.A. & C. Ry. Co.*, 174 U.S. 674, 19 S.Ct. 827, 43 L.Ed. 1130 (1899); *Northern Pacific Railway Co. v. Boyd*, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913). The rule became subsumed in the phrase "fair and equitable" in the field of equity receiverships and acquired a fixed meaning.

The rule has general application to cases under chapter 11 of the Bankruptcy Code involving all debtors, including corporations. *See In re Pecht*, 53 B.R. 768 (Bkrtcy.E.D.Va.1985); *In re Genesee Cement, Inc.*, 31 B.R. 442 (Bkrtcy.E.D.Mich. 1983); *In re Witt*, 60 B.R. 556 (Bkrtcy.N.D. Iowa 1986); *In re Modern Glass Specialists, Inc.*, 42 B.R. 139 (Bkrtcy.E.D.Wis. 1984).

Although the absolute priority rule has generally been applied in reorganization cases as a "fixed principle," an exception has developed. The exception provides that a holder of a claim of interest in a debtor may receive a distribution or retain an interest in the reorganized debtor even though all senior classes of creditors are not to be paid in full under the plan if the holder of the claim of interest makes a contribution of new capital in the form of money or money's worth that is reasonably equivalent in value to the interest retained or the distribution received. *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); *Kansas City Terminal Railway Co. v. Central Union Trust Co.*, 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028 (1926); *Sophian v. Congress Realty Co.*, 98 F.2d 499 (8th Cir. 1938); *In re Potter Material Service, Inc.*, 781 F.2d 99 (7th Cir.1986); *In re Witt*, 60 B.R. 556 (Bkrtcy.N.D.Iowa 1986); *In re Brown's Industrial Uniforms*, 58 B.R. 139 (N.D.Ill.1985); *In re Jartran, Inc.*, 44 B.R. 331 (Bkrtcy.N.D.Ill.1984); *In re Landau Boat Co.*, 8 B.R. 436 (Bkrtcy.W.D.Mo. 1981).

The Court of Appeals for the Eight Circuit recently addressed this exception in *In re Ahlers*, 794 F.2d 388 (8th Cir.1986). The *Ahlers* decision radically expanded the exception to the absolute priority rule by providing that a farmer may propose in a chapter 11 plan to contribute personal services in the form of labor and expertise as a substitute for the more traditional forms of capital such as money or property, in exchange for the retention or receipt of property under the plan. *In re Ahlers*, 794 F.2d at 402. According to *Ahlers* the value of the contribution in the form of services and the value of the equitable ownership retained by the farmer under the plan are issues for the bankruptcy court to determine at the confirmation hearing.

---

**2.** 11 U.S.C. § 1129(b)(2)(B) provides as follows:
(2) *For the purpose of* this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
(B) With respect to a class of unsecured claims—
(i) the plan provides that each holder of a claim of such class receive or retain on ac- count of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

In order to properly address Neale Bearden's third objection, the Court must determine whether the debtor's proposed plan complies with the modified exception to the absolute priority rule set forth in *Ahlers*. As in *Ahlers*, the question is "whether the farmer's new contribution is reasonably equivalent to the ownership interest the farmer would retain under the plan." *In re Ahlers*, 794 F.2d at 402.

The court in *Ahlers* recognized the inherent problems that bankruptcy courts would face in determining whether the farmer's contributions in the form of future services reasonably equaled in value the ownership interest retained. The degree of the farmer's experience and his knowledge of the type of crops and the farmland to be cultivated under the plan, as well as the amount of time the farmer proposes to spend working on the farm, are only some of the factors the Court must consider in valuing the farmer's labor. Yet in this case, there is virtually no evidence in the record from which the Court may value the debtor's future contributions of labor and expertise. Similarly, the record is almost devoid of evidence regarding the value of the debtor's proposed retained interest. The plan provides that the debtor will retain ownership of all exempt and nonexempt property. Even though the record reflects that the debtor is insolvent, no evidence was presented that the retention of the assets, as a going concern, would be valueless.

"The commercial value of property consists in the expectation of income from it.... Such criterion is the appropriate one here, since we are dealing with the issue of solvency arising in connection with reorganization plans involving productive properties.... [An] estimate [of future income] must be based on an informed judgment which embraces all facts relevant to future earnings capacity and hence to present worth, including, of course, the nature and condition of the properties, the past earnings record, and all circumstances which indicate whether or not that record is a reliable criterion of future performance."

*Consolidated Rock Products v. DuBois*, 312 U.S. 510, 526, 61 S.Ct. 675, 685, 85 L.Ed. 982 (1941), *quoted in In re Ahlers*, 794 F.2d at 402–03. The plan proposes to allow the debtor $36,000.00 per year over the plan life as living expenses. Presumably, the value of the proposed retained interest in these living expenses would be an amount which, if invested currently at an appropriate rate of interest, would generate a net income of $175,000.00 over the life of the plan. However, there is no evidence in the record to suggest the appropriate capitalization rate. The debtor was led through direct examination by counsel, and the "yes" and "no" answers were neither informative nor persuasive. Due to the lack of evidence concerning the value of the debtor's proposed contribution of services and the value of the interest to be retained, the Court cannot determine whether the two values are "reasonably equivalent," a necessary requirement under the exception to the absolute priority rule as broadened by the *Ahlers* decision.

The majority in *Ahlers* also recognized that due to the problematical nature of the valuation of a farmer's contribution of future services, the proposed plan, to be equitable, must allow the unsecured creditors to receive a pro rata share of any equity or excess profit a farmer may realize if his farming operation becomes successful under the plan.[3] Considering the present

---

3. [T]he Ahlers would not realize any real profit or benefit from their retained equitable ownership interest until the reorganization plan was completed and the secured creditors had been paid the full amount of their allowed secured claims....

We recognize, of course, that because the profitability of any reorganization plan cannot be determined with mathematical certitude, the possibility exists that the plan may be more profitable that anticipated. If so, and if the equitable ownership interest receives this excess profit, the equitable ownership interest may receive more than the value of its contribution. To avoid this result, the bankruptcy court should require that any cash flow from the operation of the farm in excess of that anticipated in the plan should be paid to the unsecured creditors on a pro rata basis until such time as the unsecured creditors are paid in full without interest. Similarly, if any secured property is sold during the life of the plan, and if the unsecured creditors have not been paid in full, excluding

state of the farm economy and depending on the depth of the farmer's insolvency, the likelihood of economic recovery for many farming operations in the near future is uncertain at best. Therefore, it is implicit in the *Ahlers* decision that the unsecured creditors' chances of recovery should not be diminished by an unrealistic plan length.[4] In the present case, the debtor's plan proposes to exist for only five years, after which the unsecured creditors would not share in any increase in equity or profits. Class U–1 is to receive not less than a nominal payment of 1% of their allowed claims annually. The practical effect of this short plan length is to deny unsecured creditors any meaningful chance to share in the future benefits of an anticipated improved farm economy.

The debtor seeks to utilize that portion of the *Ahlers* expansion of the exception to the absolute priority rule most favorable to him, the contribution of future services as capital, while ignoring the equitable safeguard in the *Ahlers* analysis that allows unsecured creditors to obtain their benefits from the plan in the future if the farm economy improves. Significantly, the narrative in the plan, which states that the plan will be for a period of five years, is illusory because several secured creditors are to receive payments over a much longer period.[5] By this manipulation, the debtor would obtain a discharge of 95% of all unsecured debts that he could not pay in the five years following confirmation due to a lack of sufficient revenues. 11 U.S.C. § 1141(d)(1) provides that the discharge is effective on the day the plan is confirmed. The discharge is not subject to revocation if the debtor fails to make all of the payments under his plan, unless the discharge was obtained by fraud. 11 U.S.C. § 1144. A careful reading of the *Ahlers* opinion leads this Court to the conclusion that a discharge of 95% of this farmer's unsecured debts after only five years of effort was not a result contemplated by the majority.

Because the debtor's proposed plan is not workable within the framework of the modified exception to the absolute priority rule set forth in *Ahlers*, it is not "fair and equitable" under 11 U.S.C. § 1129(b) and cannot be confirmed.

## D

### PLAN FEASIBILITY

Finally, the objection was raised that the plan is not feasible. In view of the foregoing reasons that the plan cannot be confirmed, the Court does not deem it necessary to consider this objection.

## IV

### CONCLUSION

For all the reasons stated, the objection to confirmation is sustained. The debtor has thirty days to file a proposed modified plan, a motion to convert to chapter 7 or a motion to dismiss. Otherwise, the case will be dismissed without further notice or hearing.

IT IS SO ORDERED.

interest, before that date, the bankruptcy court should require that any amount received in excess of that necessary to pay the secured creditors be shared equitably among the unsecured creditors and the ownership interest, based on its contribution at the time the property is sold.
*In re Ahlers*, 794 F.2d at 403.

4. The majority in *Ahlers*, in an appendix to the opinion, set forth an illustrative reorganization plan in which unsecured claims would be fully retired within 10.5 years, with the plan having a 30–year life. *In re Ahlers*, 794 F.2d at 413.

5. Class 10.1, FHA, 20 years; Class 16.1, James & Marv Dews, 10 years; Class 18.1, Marion Baugh, 9 years.